**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**THOMASVILLE DIVISION**

IDELLA HARRIS,                          *
                                        *
          Plaintiff,                    *
                                        *
vs.                                     *          CASE NO.   6:05-CV-34 (HL)
                                        *
JO ANNE B. BARNHART,                    *
COMMISSIONER OF                         *
SOCIAL SECURITY,                        *
                                        *
          Defendant.                    *          SOCIAL SECURITY APPEAL
_____         *

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's

determination, denied Claimant's application for social security disability benefits, finding

that she was not disabled within the meaning of the Social Security Act and Regulations.

Claimant contends that the Commissioner's decision was in error, and she seeks review

under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).   All

administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of

whether it is supported by substantial evidence and whether the correct legal standards were

applied.  *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).  Substantial evidence is defined

as more than a scintilla and means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d at1239.  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*   The initial burden of establishing disability is on the claimant.  *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the

---

[1]Credibility determinations are left to the Commissioner and not to the courts.  *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

authority given in the Social Security Act.  20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure.  20 C.F.R. § 404.1520, Appendix 1, Part 404.  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

I.      **Whether the ALJ's rejection of Claimant's IQ score was based on substantial evidence?**

II.     **Whether the ALJ improperly relied on the Grids to find Claimant disabled?**

III.    **Whether the ALJ failed to weigh evidence that Claimant was being treated for severe major depression and had degenerative disc disease?**

## DISCUSSION

## Administrative Proceedings

Claimant filed her second application for social security disability insurance benefits and supplemental security income on October 11, 2002. (Claimant's Brief, p. 1).   Her application for SSI benefits was denied initially and upon reconsideration.  (Defendant's Brief, p.1).  Claimant then requested a hearing which was held on September 14, 2004.  (R-21).  The ALJ denied Plaintiff's claim on November 23, 2004.  (R-18-27).  Claimant requested review of the ALJ's decision and on May 10, 2005, The Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner.  (R-4-6).

## Statement of Facts and Evidence

Claimant Harris alleges that she is disabled and entitled to benefits due to knee problems with a history of surgeries, use of a cane to walk, back problems/pain related to asthma, swelling in the legs/knees, arthritis in the ankles and right shoulder, hypertension, anxiety, vision problems, dermatitis, headaches, weakness, and dizziness. (Claimant's Brief, p. 1, 3).  Claimant also alleges that she suffers from severe major depression, post-traumatic stress disorder, antisocial personality disorder, and mild mental retardation.  (Claimant's Brief, p.3).   Claimant testified that she has trouble sleeping, concentration problems, problems following instructions, trouble following a television show, and that she has never been able to hold down a job.  (Claimant's Brief, p.2-3).  Subsequent to the hearing, the ALJ found that the Claimant had a severe impairment but that she was able to perform the full range of sedentary work.  (R-27).

4

The ALJ found that only Claimant's osteoarthritis was "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R-24). Therefore, the ALJ was required to move to the fourth step of the evaluation and determine Claimant's residual functional capacity (RFC). The Regulations state that where an ALJ finds that the Claimant's impairments do not meet the relevant Listing, he is required to make a determination as to whether the Claimant still has the residual functional capacity to engage in gainful employment by returning to his former work or performing other work which he would be able to perform taking into consideration his limitational impairments. (20 C.F.R. §§ 404.1545 and 416.945, Social Security Ruling 96-8p). In making his assessment, the ALJ is required to consider all of Claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be considered consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, and Social Security Ruling 96-7p. The ALJ is also to consider medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. (20 C.F.R. § 416.927 and Social Security Rulings 96-2p and 96-6p).

I.   **Whether the ALJ's rejection of Claimant's IQ scores was based on substantial evidence?**

In her Brief, Claimant argues that the ALJ's rejection of her IQ score is not supported by substantial evidence. (Claimant's Brief, p. 9-16). Specifically, Claimant argues that the

ALJ erred when he rejected the finding of mental retardation by the only psychologist to evaluate Claimant  "in favor of inconsequential trivia."  (Claimant's Brief, p. 9).

Here, the ALJ found that the opinion of the non-examining consultant deserved greater weight than that of the examing consultant, stating:

> [The undersigned discounts the diagnosis of mild mental retardation by Dr. Czerlinsky (Exhibit 7F) because the claimant reported to Dr. Czerlinsky that she could not read or write; however, as outlined above, it has been established that the claimant can read, write and do simple math problems (Exhibits 3F, 8E and 10E).  Also, the claimant has a work history which shows that she performed simple tasks in the past (Exhibit 3E). Finally, Dr. Rowan indicated that the claimant's diagnosis is borderline intellectual functioning and anti-social personality disorder rather than mild mental retardation.  She stated that the claimant does not meet the mental retardation capsule definition and she has a job history indicating that she can perform simple tasks.  Dr. Rowan's opinions are consistent with the totality of the evidence in this case, and thus are given great evidentary weight in this decision (20 CFR 416.927(d)(4).  Accordingly, the undersigned finds that the claimant's mental impairments are not severe.

(R-25).  In *Warncke v. Harris*, the former Fifth Circuit Court of Appeals determined that little weight should be accorded "to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient."[2]  *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980); citing *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980).  It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).

---

[2]  The Eleventh Circuit, sitting en banc in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

However, a treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). The ALJ failed to weigh the regulatory factors which give examining doctor's opinions greater weight than non-examiners, and specialists more weight than non-specialists. 20 C.F.R. §404.1527(d). No medical evidence of record contradicts the test results of Dr. Czerlinsky, a qualified examining psychologist.

The ALJ believes that Claimant under-exaggerated her abilities during her examination by Dr. Czerlinsky for the following reasons: the claimant reported to Dr. Jason E. Griffin, M.D., during her physical examination that she was "able to read and perform simple mathematic calculations such as addition, subtraction and multiplication"(R-156); because she twice responded affirmatively on a general questionnaire returned to the Social Security Administration when asked if she could read and write (R-134, 139); and also because Claimant answered "no" when a questionnaire asked if she needed assistance completing the form  (R-136). In continuation of this alleged pattern of misrepresentation, the Commissioner argues that "Plaintiff's statements regarding her education also undermine the credibility of her allegations and Dr. Czerlinsky's report and opinion." (Claimant's Brief, p.8).

Dr. Thomas Czerlinsky's evaluation does not state that Claimant "reported" to him

that she could not read or write.  (R-181-5).  Dr. Czerlinsky gave Claimant a "Mini-Mental

Status Exam" during his examination of her.  (R-181-2).  After completing the clinical

testing, Dr. Czerlinsky found that "[Claimant] was unable to follow simple instructions.  She

was unable to read a simple sentence.  She was unable to write a brief sentence."  (R-182).

In Dr. Czerlinsky's report he noted that the claimant "completed the 6th grade at Douglas

High School in Thomasville, GA, in 1972."  (R-181).  Claimant argues that her disability

report was the source of Dr. Czerlinsky's notation regarding her education.  (Claimant's

Brief, p.11).  The Commissioner argues "Plaintiff's claim that her disability report was the

source of Dr. Czerlinsky's notation regarding Plaintiff's education is contradicted by the

document itself.  (Commissioner's Brief, p. 8) (R-92).  Dr. Czerlinsky's notation thus

**appears** to be based on Plaintiff's statements, not what she reported in her disability report."

(Commissioner's Brief, p. 8) (emphasis added).  Dr. Czerlinsky states in his report that he

reviewed Claimant's records/collateral information and that Claimant only provided "some

of the historical information herself."  (R-181-185).  There is no evidence in the record to

indicate that Claimant lied to Dr. Czerlinsky or intentionally tried to mislead him.  The

Commissioner can not use supposition to implicate untoward  motives on the part of

Claimant when the argument could just as easily be made that it **appears** that Dr. Czerlinsky

or his staff made a typographical error on his report.  As noted by the Commissioner,

Claimant consistently stated that she attended school until 1972, when she was sixteen (16)

years of age and in the Eighth Grade (R-92, 134, 139).  There is no legitimate reason to

believe that Claimant changed her statement regarding her education at any time.  This court

notes that the Commissioner contributes some very devious and deliberate thinking to an individual found to have, at the very least, borderline intellectual functioning.

The Commissioner further argues that "at least some of the documents submitted by Plaintiff with her claim **appear** to be completed by her, which also indicates that she could read and write (Tr. 38, 43, 85-92, 100-07, 119-26, 129, 132-136, 139-45)." (Commissioner's Brief, p. 8). Only one of these forms or questionnaires cited by the Commissioner even asks if Claimant needed assistance completing the form (R-136). This court notes that an Ada O. Harris signed and stated that she assisted Claimant in completing the Daily Living Questionnaire completed on April 4, 2003. (R-112A). It is clear from the forms themselves that they consist of answers or statements in several different handwritings. However, this Court does not find that relying on an assumption that Claimant completed some of the forms without any indication of which form(s), or how many, or if any assistance was provided, is not proper and said assumption should not be used to support or bolster the ALJ's findings as to Claimant's IQ or credibility.

The Commissioner argues that Claimant made statements to Dr. Czerlinsky in the course of her examination that were inconsistent with other evidence. (Commissioner's Brief, p.8). The Commissioner argues that "despite the fact that [Claimant] had worked (Tr. 86-87, 100-04, 182)," Claimant "reported that she had never been able to hold down a job and she reported no employment history to Dr. Czerlinsky." *Id*. The Commissioner argues that the ALJ, Dr. Rowan and Dr. Clark "reasonably read Plaintiff's statements to Dr. Czerlinsky as an attempt to minimize her work history (Tr. 23, 212, 225-6). *Id*. However,

in the paragraph immediately preceding this argument, the Commissioner argues that Claimant reported to Dr. Czerlinsky a different educational level than appeared in Adult Disability Report (Commissioner's Brief, p.8), that Dr. Czerlinsky received from the Social Security Administration to complete the requested consultative examination[3] (R-85-92, 181). Thus, it is clear that Dr. Czerlinsky had a document which included Claimant's work history. Dr. Czerlinsky's statement that claimant "report[ed] no employment history," is unexplained in his report.  The Commissioner provides no evidence as to the scope of Dr. Czerlinsky's questioning of Claimant regarding prior employment.  The Commissioner can not state whether Dr. Czerlinsky asked Claimant about employment over the prior ten (10) or fifteen (15) years, or whether he asked her if she had ever been employed, and can not use supposition to imply that Claimant intentionally under-exaggerated her past employment history.  Perhaps even more telling, the implication of Claimant's statement to Dr. Czerlinsky that "she had never been able to hold down a job" (R-181), is that, at the very least, she had attempted to work at some point.  Therefore, Dr. Czerlinsky did receive information from Claimant that she had worked, regardless of how he chose to phrase it in his report.  Furthermore, as Dr. Czerlinsky was provided a copy of her disability report, there is no question that he was aware of her work history and had an opportunity to discuss it with the claimant or include it in his report.

In *MacGregor v. Bowen*, the ALJ rejected the consulting psychologist's testimony as

---

[3] In Dr. Czerlinsky's report he states "The following background document(s) were supplied: (1) Disability Report - Adult, undated."  (R-181).  A thorough examination of the record reveals that only one report exists with that title.  (R-85-92).

internally inconsistent and at odds with other evidence in the record.  786 F.2d 1050, 1053 (11th Cir. 1986).  The Eleventh Circuit determined that this rejection was not supported by substantial evidence.  *Id*.  The court noted that the psychologist interviewed the claimant and "conducted significant testing, including the Minnesota Multiphasic Personality Inventory. From his interview and from testing he concluded that MacGregor's depression was such that he could not operate under pressure nor relate appropriately to supervisors or co-workers." *Id*.  The Appeals Council overturned the ALJ's disability determination, finding that the psychologist's determination that the claimant was "intelligent enough to understand and follow orders and to solve problems," to be inconsistent with his diagnosis of depression. The Eleventh Circuit found no inconsistency and reminded the appeals counsel that "highly intelligent and able people do fall prey to crippling depression."  *MacGregor*, 786 F.2d at 1053-4.  The Eleventh Circuit also addressed an alleged inconsistency between the psychologist's findings and a note from the consulting examining psychiatrist which stated that the claimant "appears unimpaired" in regards to MacGregor's ability to sustain interpersonal relationships.  *MacGregor*, 786 F.2d 1054.  As to the statement of the psychiatrist, the Court of Appeals found that "[s]ince his simple statement is neither explained nor supported by any testing, we conclude that it is not substantial evidence to refute Dr. Brown's finding of depression."  Additionally, the court found that the diagnosis of depression was supported by other evidence in the record.  *Id*.  The Eleventh Circuit Court of Appeals further noted that "the Secretary by his regulations prefers testimony supported by testing or clinical findings to unsupported testimony."  *MacGregor*, 785 F.2d at 1054; *See*

11

*e.g.*, 20 C.F.R. §§ 404.1513, 404.1527-1529.

As in *MacGregor*, the Commissioner asserts inconsistencies between the record and a medical source report. This Court, however, does not find that the facts alleged are inconsistent. Claimant's statements that she can read write, and do simple math are not inconsistent with clinical testing which showed Claimant could read at a first grade level and complete math problems on a second grade level. (R-183). The only clinical testing as to Claimant's intellectual functioning was performed by Dr. Czerlinsky. In his three hour psychological consultative examination, Dr. Czerlinsky used the following assessment techniques: interview; record review; WAIS-III; WRAT-3; Mini-Mental Status Exam; ADL Activity Scale; Bender-Gestalt; and C. Bryant/07. (R-181). Dr. Czerlinsky found that Claimant was mildly mentally retarded and had Antisocial personality disorder. (R-184). Dr. Rowan completed a Psychiatric Review Technique form on June 20, 2003, using "record review" only. (R-213). From this review, Dr. Rowan determined that Claimant lacked credibility and was exaggerating her limitations at her consultative examination. (R-225-6). However, Dr. Czerlinsky, who spent three hours with Claimant, determined that her "[t]hought processes were slow. She was compliant throughout the process, and it is judged that she was sincere in her efforts, and that the results appear to be valid." (R-182-3). Dr. Czerlinsky completed a validity assessment which stated:

> Throughout the assessment process, Ms. Harris was focused and motivated, and she attempted to complete all testing to the best of her ability. She seemed sincere about the process, and clearly was trying to perform at her optimum level. Based on observations and interviews, the assessment results are

12

> considered to be valid and to accurately reflect Ms. Harris'
> current level of functioning.

(R-184).  Dr. Czerlinsky further found that Claimant "appear[ed] unable to handle her own

funds at this time, and unable to make reasonable life decisions."  (R-185).

Dr. Rowan, on the other hand, found that Claimant had borderline intellectual

functioning and Antisocial personality disorder, with only a mild functional limitation in

maintaining concentration, persistence or pace.  (R-223).  Additionally, Dr. Rowan relied

partially on a notation of another non-examining medical consultant to call Claimant's

credibility into question.  (R-225).  Dr. Rowan stated that the consultant found that Claimant

was not credible and called her allegations "nonsense."  *Id*.  Although the non-examining

medical consultant's case analysis dated February 18, 2003, does indicate that he finds

Claimant not credible, the consultant then states that her complaint of decreased vision is

non-severe.  (R-172).  Contrary to Dr. Rowan's statement, the consultant did not call

Claimant's allegations nonsense. *Id*.  Furthermore, this consultant determined that Claimant

was not credible based on a statement  in the letter from Dr. John M. Dixon, who examined

Claimant's vision on January 17, 2003.  (R-169-171).  Dr. Dixon stated "[v]isual field done

according to your criteria were totally unreliable."  (R-169).  Dr. Dixon did not state that

Claimant was exaggerating or giving false statements to him or his staff regarding her visual

acuity.   As in *MacGregor*, the consultant's statement that Claimant is not credible is

unexplained.   When a doctor is silent on an issue or does not address it at all,  the

Commissioner can not use that silence, or the lack of comment on a issue to disprove a

claimant's allegations.  "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Lamb v. Bowen*, 857 F.2d 698, 703 (11th Cir. 1988). Since this simple statement is neither explained nor supported by any testing, it is not substantial evidence to call into question Claimant's overall credibility.

On April 14, 2003, Thomas L. Clark, Ph.D., also completed a psychiatric review technique form on Claimant, using a record review only.  (R-198-212).  The record indicates that Dr. Clark only evaluated Claimant for organic mental disorders.  (R-198).  Dr. Clark determined that Claimant had borderline intellectual functioning (R-199), but did discuss Claimant's "antisocial traits" (R-212).  Dr. Clark found that Claimant was mildly restricted in her activities of daily living, had a mild degree of difficulty maintaining social functioning, and had mild difficulties in maintaining concentration, persistence or pace.  (R-208). Specifically, Dr. Clark found that Claimant's activities of daily living would be "[r]estricted for some academically demanding tasks, but adequate for a wide range of normal productive activities."  (R-212).  The ALJ did not mention Dr. Clark's psychiatric review, nor did he credit Dr. Clark's finding that Claimant would be academically restricted in some of her tasks.  Rather, the ALJ took the least restricting opinion, that of Dr. Rowan, and gave it "great evidentiary weight" in his decision.  (R-24).

On July 2, 2003, Dr. David Guttman, a non-examining consultant, completed a residual Functional Capacity Assessment - physical, finding Claimant to be credible and consistent, only noting that Claimant could ambulate without her cane.  (R-232).  In his consultative examination of Claimant on December 12, 2002, Dr. Jason E. Griffin did note

that Claimant could ambulate without her cane, but further stated that she appeared uncomfortable and favored her left leg. (R-165). Thereafter, Dr. Griffin found that Claimant required the four-pronged cane to ambulate effectively.  (R-168).

In evaluating credibility, "[b]ased on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible." S.S.R. 96-7p.  A limitation cannot be established solely by a claimant's own report. *See* 20 C.F.R. § 416.928(a).  The record must contain medical evidence, in the form of observable abnormalities or laboratory findings, that "shows the existence of a medical impairment(s) . . . which could reasonably be expected to produce" the alleged limitation. *Id.* "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The ALJ found that in light of the medical reports of the treating and examining physicians, that Claimant's testimony was not totally credible. (R-27).  In this case, the ALJ assessed Claimant's testimony and deemed said testimony not substantiated by the objective medical evidence and used his judgment of her credibility as an excuse to disregard the only clinical testing in the record related to Claimant's mental capacity and Anti-social personality disorder.

Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may not

decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[4]
*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the
Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610
F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the
reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d
at 1239. However, even if the evidence preponderates against the Commissioner's decision,
it must be affirmed if substantial evidence supports it. *Id.*

This court finds that the ALJ's findings as to Claimant's IQ score and her credibility
were not supported by substantial evidence in the record. A reasonable mind would not
accept this conclusion, which was based upon inferences, assumptions, and too large leaps of
logic. On remand, additional testing should be performed to determine Claimant's mental
capacity, possible personality disorders, and Claimant's literacy level. Thereafter, the ALJ
should re-examine Listing 12.05(B), using the appropriate standards, and properly determine
if Claimant meets the aforementioned Listing or if the medical evidence indicates that
Claimant has a non-exertional mental impairment.

## II.     Whether the ALJ improperly relied on the Grids to find Claimant disabled?

Claimant urges that substantial evidence does not support the decision of the
Commissioner because the ALJ relied on the Grids instead of a Vocational Expert (VE) to

---

[4]Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*,
936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve
conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v.
Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

find Claimant not disabled.

In making his RFC assessment, the ALJ acknowledged that he must consider all symptoms, including pain, and medical opinions as directed by 20 CFR §416.929, Social Security Ruling 96-7p, CFR §416.927, and Social Security Rulings 96-2p and 96-6p. (R-24). The ALJ then went to great length to discuss Claimant's credibility and determined that Claimant had the RFC to perform a full range of sedentary work. (R-24-25).

The initial burden lies with Claimant to show impairment serious enough to prevent work in her previous job. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (additional citations omitted). "If this burden is met, the burden shifts to the [Commissioner] to prove that the claimant is capable, considering [her] age, education, and work experience, of engaging in any other kind of substantial gainful work which exists in the national economy." *Sryock*, 764 F.2d 836; *see* 42 U.S.C. §423(d)(2)(A). Here, the ALJ found that Claimant "had no past relevant work." (R-25). Thus, the burden shifted to the Commissioner to show that Claimant was capable of substantial gainful work.

After finding Claimant capable of sedentary work, and considering possible past relevant work of Claimant, the ALJ stated:

> The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion (as defined in Social Security Ruling 83-10) and there are no nonexertional limitations. When all of the criteria of a Medical-Vocational Rule are meet, the existence of occupations in the national economy is met by administrative notice. To determine

> the physical exertion requirements of work in the national
> economy, jobs are classified as sedentary, light, medium, heavy,
> and very heavy based upon the Dictionary of Occupational Titles,
> which is published by the Department of Labor based upon the
> guidelines in 20 CFR §§ 404-1567 and 416.967.

(R-31-32) (emphasis added). In his Findings, the ALJ then explained sedentary work. (R-26).

Thereafter, the ALJ found that "[b]ecause evidence supports a finding that the claimant can

perform the demands of the full range of sedentary work, a finding of 'not disabled' is

directed by Medical-Vocational Rules 201.18, Table No. 1, Appendix 2, Subpart P of

Regulations No. 4." *Id.*

An ALJ may use the Grids in lieu of vocational testimony on specific jobs so long as:

1) the claimant is able to perform a full range of work at a given functional level; 2) the

claimant has no nonexertional impairments that significantly limit basic work skills; and, 3)

the claimant has no nonexertional limitations severe enough to preclude a wide range of

employment at the given exertional level. *Martin v. Railroad Retirement Bd.*, 935 F.2d 230,

234 (11th Cir. 1991). *See also Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992).

Nonexertional limitations are limitations and restrictions imposed by an impairment and

related symptoms that affect an individual's ability to meet the demands of jobs other than

strength demands. Examples of nonexertional limitations, in addition to pain, are: difficulty

functioning because of nervousness, anxiety, or depression; difficulty maintaining

concentration or attention; difficulty understanding or remembering detailed instructions;

difficulty seeing or hearing; difficulty tolerating some physical feature of certain work settings

(e.g., dust or fumes); and difficulty performing the manipulative or postural functions of some

work such as reaching, handling, stooping, climbing, crawling, or crouching.  20 C.F.R. §
416.969a(c).

The ALJ may also rely on the Grids despite the presence of nonexertional
impairments, when these impairments are found to not be credible.  *Francis v. Heckler*, 749
F.2d 1562, 1566-67 (11th Cir. 1985).  The ALJ found that Claimant's subjective allegations
were not credible because of some inconsistencies in Claimant's statements in the record and
discounted the diagnosis of Dr. Czerlinsky.  (R-24-5).

> Because the evidence shows that the claimant has mild mental
> retardation; and anti-social personality disorder, the undersigned
> is required to determine (a) the severity of the mental
> impairments, (b) if severe, whether the requirements of any of the
> Listings of mental impairments are satisfied, and (c) if not a
> Listing case, what the mental restrictions of her mental residual
> functional capacity are (20 CFR 416.920a).  These impairments
> are rated in four areas: activities of daily living; social
> functioning; concentration, persistence or pace; and repeated
> episodes of decompensation, each of extended duration.  The
> undersigned finds that the claimant has no limitations in the area
> of activities of daily living; no limitation in maintaining social
> functioning; mild limitations in concentration, persistence or
> pace; and no episodes of decompensation, each of extended
> duration.  These findings are based on the assessments of Dr.
> Rowan as outlined above (Exhibit 10F). . . .Dr. Rowan indicated
> that the claimant's diagnosis is borderline intellectual functioning
> and anti-social personality disorder rather than mild mental
> retardation.  She stated that the claimant does not meet the mental
> retardation capsule definition and she has a job history indicating
> that she can perform simple tasks.  Dr. Rowan's opinions are
> consistent with the totality of the evidence of this case, and thus
> are given great evidentiary weight in this decision (20 CFR
> 416.927(d)(4).  Accordingly, the undersigned finds that the
> claimant's mental impairments are not severe. . . .

(R-24).  The ALJ found the preceding assessments to be consistent with the evidence of

record when viewed in its entirety and supportive of his RFC of a full range of sedentary work.  (R-25).  Not withstanding the ALJ's decision as to the severity of Claimant's mental impairments, the relevance of these passages is that the ALJ gave Dr. Rowan's opinion great weight.  Said opinion indicated that Claimant had borderline intellectual functioning and anti-social personality disorder.  As previously stated, the ALJ found that Claimant had no past relevant work, therefore, the burden shifted to the Social Security Administration to show that there are jobs existing in significant numbers in the national economy that Claimant can perform, consistent with her RFC, age, education and work experience.

An ALJ has an obligation to develop a full and fair record regarding the vocational opportunities available to a claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989); See *Welch v. Bowen*. 854 F.2d 436, 440 (11th Cir. 1988).  "Ordinarily, when non-exertional limitations are alleged, vocational testimony is used."  *Allen*, 880 F.2d at 1201-2; See *MacGregor v. Bowen*, 826 F.2d 1050, 1054 (11th Cir. 1986) ("When there have been non-exertional factors (such as depression and medication side effects) alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert.").  (Additional citations omitted).  "It is only when the claimant can clearly do *unlimited* types of work [within a specified category of exertional work], . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."  *Allen*, 880 F.2d at  1202; citing *Ferguson v.*

*Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981) (emphasis in the original). [5]

Herein, Claimant alleged non-exertional limitations;  mild mental retardation, anti-social

behavior, and depression.  While the ALJ found that there was no medical evidence to support

a claim of depression or mild mental retardation, the ALJ did find that the claimant had

borderline intellectual functioning and anti-social behavior, though he determined neither was

severe.  (R-24).   The ALJ's Findings indicate that the he was fully aware that Claimant

attended some special education classes (R-22, 92), that she had a limited education (R-26),

and that her past work consisted of simple or non-complex tasks (R-23).  Despite his Findings

as to all of these facts, the ALJ failed to procure vocational expert testimony that there were

sedentary jobs available to Claimant given these non-exertional limitations.  A vocational

expert, Mr. William Sabo, was present at the hearing, but did not testify.  (R-279, 294).  The

ALJ disregarded any need for the VE's testimony, stating, "Ms. McGraw, I don't think I need

Mr. Sabo's services today.  I don't think he can shed any light on anything since, since we

don't have a work history in the last 15 years."  (R-294).

      This is where the ALJ faltered.  The ALJ acknowledges that the use of the Grids is

only appropriate when Claimant has the exertional RFC to  meet all seven of the primary

strength demands required by work at a given exertional level and there are no nonexertional

limitations.   In this case, the ALJ determined that Claimant had borderline intellectual

functioning and an anti-social personality disorder.  (R-24).  Despite the fact that the ALJ

---

[5]  In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

found Claimant's mental impairments to be "non-severe," he is required to consider any non-exertional limitation that has been medically determined, in the fifth step of his evaluation.

In 1989 the Eleventh Circuit expressed its agreement with the prior holdings of the First and Eighth Circuit cases that found "even a 'mild' mental impairment may 'prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.' " *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); See *Tucker v. Shweiker*, 689 F.2d 777, 780 (8th Cir. 1982), quoting *Gargon v. Secretary of Health and Human Services*, 666 F.2d 662, 666 n..8 (1st Cir. 1981). Besides his determined physical exertion level of light work, the ALJ in *Allen* found that the claimant had borderline mental retardation and a mood disorder. *Id*. The court determined that "[a]bsent testimony from a vocational expert, the ALJ's conclusions that appellant's mental limitations do not significantly compromise her basic work skills or are not severe enough to preclude her from performing a wide range [of work within her determined exertional level], [was] not supported by substantial evidence." *Id*.

As Claimant had medically diagnosed and documented allegations of mental impairments that all three psychologists believed would impair her, though they disagreed as to what degree, the ALJ's use of the GRIDS was an incorrect application of the law. Therefore, this Court recommends that the decision of the Commissioner be remanded for testimony from a vocational expert to determine if there are any jobs in significant numbers that Claimant could perform, given any non-exertional limitation(s) determined after the ALJ's re-evaluation.

**III.    Whether the ALJ failed to weigh evidence that Claimant was being treated for**

**severe major depression and had degenerative disc disease?**

In her brief, Claimant argues that the ALJ erred in his RFC assessment because he
failed to weigh evidence that Claimant was being treated for severe major depression.
(Claimant's Brief, p.18).  The Commissioner argues that Claimant failed to meet her burden
of proving that she had a severe mental impairment.  (Commissioner's Brief, p.10).  Code
section 416.905 provides the basic definition of disability for adults seeking supplemental
security income.  20 C.F.R. § 416.905.  Disability is defined as:

> (a) . . . the inability to do any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death **or which**
> **has lasted or can be expected to last for a continuous period**
> **of not less than 12 months**.

*Id.*  (emphasis added).  This is called the "duration requirement" and is a basic element that
Claimant must prove before he can be declared disabled.  20 C.F.R. §§ 416.905 and 416.909.
 Although Claimant alleged depression at her psychological consultative examination with Dr.
Czerlinsky on April 1, 2003, Dr. Czerlinsky stated that he found no signs of depression.  (R-
184).  The only medical evidence of record to support Claimant's alleged depression is ten
pages of treatment records from October 2003 to July 2004, only nine months of treatment.
(R-266-277).

It is the responsibility of the ALJ to determine if an impairment is severe under the
disability guidelines.  That determination must be made using the definitions given in the
regulations.  Those regulations require that an impairment must either be expected to cause

23

death, have lasted twelve months or be expected to last twelve months, to be even be considered an "impairment" for purposes of disability benefits.  20 C.F.R. §§ 416.905(a) and 416.909.  The burden is on Claimant to prove that she has an impairment, that includes the duration requirement.  As Claimant  failed to prove that her alleged depression met the duration requirement for impairments, the ALJ was not required to evaluate said depression any further.  20 C.F.R. §§ 416.905(a) and 416.909.

Claimant also argues that the ALJ failed to address his reasons for finding Claimant's back impairment to be non-severe.  (Claimant's Brief, p.19).  Specifically, Claimant argues that "[x]-rays of her lumbrosacral spine showed degenerative disc disease at L2-3 and L3-4 with disc space narrowing, osteophytic bony changes, and straightening of the lumbar lordosis," and that Claimant has been diagnosed with degenerative disc disease." (Claimant's Brief, p.19) citing (R-157, 162, 86).

In his Findings, the ALJ disregarded Claimant's allegation of pain in her back and knees, stating that "[t]here is a lack of objective evidence to support her alleged subjective symptoms/complaints," and reiterating his and Dr. Rowan's belief that Claimant lacked credibility.  (R-25).  At her Disability Physical Examination with Dr. Jason E. Griffin in December 2002, Claimant complained of low back pain that was constant with dull aches.  (R-156).  Dr. Griffin had an x-ray taken of Claimant's lumbar area which confirmed degenerative disc disease.  (R-162).  Thereafter, in his letter to the Administration dated December 12, 2002, Dr. Griffin diagnosed Claimant with degenerative disc disease.  (R-157).  Thus, Claimant met the duration requirement well before her hearing before the ALJ on

September 14, 2004.

Although Claimant did not claim degenerative disc disease as one of her impairments in her initial application, Claimant did state that she had a "bad back." (R-86). The ALJ acknowledged Claimant's allegation of a "bad back" in his Findings. (R-22, 24). The ALJ further acknowledged that Claimant stated that "[s]he could not stand for long periods of time; sit in one spot too long; her back gives out; and she has to keep her knees elevated." (R-24). The ALJ also acknowledged Claimant's testimony that "[s]he always has pain in her back." (R-25).

As to the "non-exertional limitation" of pain, the Eleventh Circuit has held that in order for a claimant's subjectively alleged pain to be deemed credible by the ALJ, he must *first* show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ found that there was a lack of objective evidence in the record to support Claimant's alleged symptoms or complaints. Although the ALJ was aware of Claimant's diagnosis of degenerative disc disease L2-4 (R-23), he dismissed her allegations of back pain based on his assessment of Claimant's credibility and the fact that she walked to her psychological evaluation. (R-25). In fact, the ALJ stated "[t]he claimant's allegation that she cannot stand for long periods of time or put pressure on her knees is inconsistent with her ability to walk to the consultative evaluation alone (Exhibit 7F) indicating she can walk enough to meet the

standing/walking requirements of sedentary exertional work activities." *Id*. This court could find no evidence in the record to indicate how great of a distance Claimant was required to walk to get to the consultative evaluation. Dr. Czerlinsky did not state whether Claimant walked a great or short distance, he only stated that she walked there and arrived alone (R-181). As previously stated, "such silence is equally susceptible to either inference, therefore, no inference should be taken." *Lamb v. Bowen*, 857 F.2d 703. Here, the Commissioner argues that Claimant is not credible and must not have back pain or restrictions due to degenerative disc disease because she walked an undetermined distance to attend her consultative examination. This Court has found that the ALJ's reasoning regarding his dismissal of Dr. Czerlinsky's testing, his report, and Claimant's credibility was based on assumptions and inferences which were not supported by substantial evidence. Therefore, an unexplained notation that Claimant walked to her examination and references to her credibility are not substantial evidence to disregard Claimant's complaints of pain which could reasonably be supported by a diagnosis of degenerative disc disease. This Court recommends that on remand the ALJ re-evaluate Claimant's complaints of pain.

## REMEDY

Claimant urges the reversal of the decision of the ALJ and Appeals council, citing *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1989). (Claimant's Brief, p.20). In *Lamb*, the Appeals Council reviewed the decision of the ALJ granting benefits and reversed such, stating that the ALJ's decision was not supported by substantial evidence. *Lamb*, 847 F.2d at 701. The sole issue in the case, as determined by the eleventh Circuit Court of Appeals,

was whether the decision of the Secretary was supported by substantial evidence and based upon proper legal standards. *Id*. The Eleventh Circuit stated that "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb*, 847 F.2d at 701; citing *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984). In *Lamb*, the court reversed and remanded with instructions to adopt the recommended decision of the ALJ, because the decision "was supported by substantial evidence, reflected appropriate application of the proper legal procedures and properly considered and weighed all evidence." *Lamb*, 847 F.2d at 704. More importantly, the court found that there was "no need for additional evidence." *Id*. Here, at the very least, additional testimony is required from a vocational expert to determine if significant jobs exist in the national economy that Claimant can perform given these non-exertional limitations. Therefore, this Court does not recommend reversal.

## CONCLUSION

After a review of the record, Claimant's contentions that the ALJ erred in his credibility assessment of Claimant, his use of the Grids to find that Claimant was not disabled, and his failure to assess Claimant's degenerative disc disease were substantiated. Because there was error found in the ALJ's assessment, his finding that the Claimant had the RFC to perform sedentary work was not supported by substantial evidence and should be re-evaluated after a thorough assessment of the record and additional testing as to Claimant's mental capacity, literacy and mental impairments. Thereafter, if it is determined that Claimant has any non-exertional limitation(s), the testimony of a vocational expert should be utilized to determine whether Claimant can perform other work that exists in significant numbers in the

27

national economy.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **REMANDED** for further consideration as indicated above.

Pursuant to 28 U.S.C. § 636(b)(1), written objections to this recommendation may be served and filed with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

THIS the 14th day of April, 2006.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc